# EXHIBIT A

<table>
<tr><td colspan="2"><b>Fill in this information to identify the case:</b></td></tr>
<tr><td>Debtor 1</td><td>Nasir M Malik</td></tr>
<tr><td>Debtor 2<br>(Spouse, if filing)</td><td></td></tr>
<tr><td colspan="2">United States Bankruptcy Court for the: Eastern District of New York</td></tr>
<tr><td>Case number</td><td>20-43196-nhl</td></tr>
</table>

Official Form 410

# Proof of Claim

12/15

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:  Identify the Claim

**1. Who is the current creditor?**

Medallion Bank
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No

☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Jaspan Schlesinger LLP Attn:Frank Dell'Amore
Name

300 Garden City Plaza, 5th Fl.
Number       Street

Garden City       NY       11530
City       State       ZIP Code

Contact phone (516) 393-8289

Contact email fdellamore@jaspanllp.com

Where should payments to the creditor be sent? (if different)

Medallion Bank c/o Asset Recovery
Name

437 Madison Avenue, 38th Floor
Number       Street

New York       NY       10022
City       State       ZIP Code

Contact phone (212) 328-3664

Contact email mfcassetrecovery@medallion.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _

**4. Does this claim amend one already filed?**

☑ No

☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No

☐ Yes. Who made the earlier filing? _____

**Part 2:  Give Information About the Claim as of the Date the Case Was Filed**

6. **Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

7. **How much is the claim?**    $_____281,738.98__. Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned/Judgment

9. **Is all or part of the claim secured?**

☐ No

☑ Yes.    The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☑ Other. Describe:    NYC Taxi Medallion #8B44 & other collateral

**Basis for perfection:**    Filed UCC Financing Statement/Entered Judgment

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $_____

Amount of the claim that is secured:    $_____281,738.98

Amount of the claim that is unsecured:    $_____  (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $_____

Annual Interest Rate (when case was filed) _9.00_ %

☑ Fixed

☐ Variable

10. **Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

11. **Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check all that apply:*

Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $_____

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $_____

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.   $_____

\* Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:   Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   **9 / 28 / 2020**
           MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

Name   **Thomas J. Munson**
       First name    Middle name    Last name

Title   **Assistant Treasurer**

Company   **Medallion Bank**
          Identify the corporate servicer as the company if the authorized agent is a servicer.

Address   **437 Madison Avenue, 38th Floor**
          Number    Street
          **New York**                    **NY**    **10022**
          City                             State    ZIP Code

Contact phone   **(212) 328-3664**          Email   mfcassetrecovery@medallion.com

---

**Debtor: Nasir M Malik**
<u>**EDNY Case No. 20-43196-nhl (Ch. 11)**</u>

| | | |
|---|---|---|
| Judgment amount: | $ | 279,260.07 |
| Interest at 9.0% from 7/28/2020 to 9/1/2020: | $ | 2,478.91 |
| **Total Amount Due:** | $ | **281,738.98** |

INDEX NO. 513466/2020

NYSCEF DOC. NO. 2

FILED: KINGS COUNTY CLERK 07/27/2020 04:10 PM

RECEIVED NYSCEF: 07/27/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------X

MEDALLION BANK,                                            Index No.:

                                    Plaintiff,        **JUDGMENT BY CONFESSION**

        -against-

NASIR MAHMOOD MALIK,                          Plaintiff's Address:
                                                          437 Madison Avenue, 38th
                                    Defendant.        Floor New York, New York
                                                          10022
-------------------------------------------------X

On filing the foregoing Affidavit for Judgment by Confession made by defendant, Nasir

Mahmood Malik, the affidavit of Thomas J. Munson, Assistant Treasurer of Medallion Bank, sworn

to on the 23rd day of July, 2020, and the application of Jaspan Schlesinger LLP, attorneys of record

for the Plaintiff, it is

        **ADJUDGED** that Medallion Bank, located at 437 Madison Avenue, 38th Floor New York,

New York 10022, recover against defendant, Nasir Mahmood Malik, with a last known address of

2775 East 12th Street, Apt. 102, Brooklyn, New York 11235, in the principal sum of $274,423.08,

plus interest in the amount of  $3,506.51, as of June 30, 2020, plus interest from and after June 30,

2020, through and including the date judgment is entered at the note rate of 5.00% per annum in the

amount of $ 1,105.48 , together with costs and disbursements in the amount of $225.00 as

taxed by the Clerk for a total amount of $ 279,260.07 , and that Plaintiff have execution

therefor.

JUDGMENT entered this 28th day of July , 2020.

                                                    _Nancy T. Sunshine_
                                                    CLERK

Respectfully Submitted by:                          NANCY T. SUNSHINE
Christopher D. Palmieri, Esq.                            Clerk
JASPAN SCHLESINGER LLP
*Attorneys for Plaintiff*
300 Garden City Plaza, 5th Floor
Garden City, New York 11530
(516) 393-8221

2020 JUL 28  AM 10: 11
FILED
KINGS COUNTY CLERK

CDP/D1474139v1/M078256/C0179960

3944495                              1 of 2

NYSCEF DOC. NO. 11

NYSCEF DOC. NO. 3

INDEX NO. 513466/2020

RECEIVED NYSCEF: 07/27/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------------------X

MEDALLION BANK,

                          **Plaintiff,**

    -against-

NASIR MAHMOOD MALIK,

                         **Defendant.**
------------------------------------------------X

Index No.:

**COSTS**

Costs at $ 225.
This 28 day of July 2020
Nancy T. Sunshine
Clerk of Court Kings County

2020 JUL 28  AM 10: 11
KINGS COUNTY CLERK
FILED

| | |
|---|---|
| Costs by Statute: | $15.00 |
| Index No. Fee: | $210.00 |
| Total: | $225.00 |

    The undersigned admitted to practice in the courts of the State of New York affirms that affirmant is a partner with Jaspan Schlesinger LLP, the attorneys of record for plaintiff in the above entitled action; that the foregoing disbursements have been or will necessarily be made or incurred in this action and are reasonable in amount; and that copies of documents or papers as charged herein were actually and necessarily obtained for use.

    The undersigned affirms that the foregoing statements are true, under the penalties of perjury.

Dated:      Garden City, New York
            July 27, 2020

                                         Christopher D. Palmieri

## SECURITY AGREEMENT

AGREEMENT, made the 18th of February, 2016, by and between NASIR MAHMOOD MALIK, having an address at 2775 East 12th Street Apt. 102, Brooklyn, New York 11235 (the "Borrower" and/or "Debtor"), and MEDALLION BANK having an office at 1100 East 6600 South, Suite 510, Salt Lake City, Utah 84121 (the "Lender and/or Secured Party").

## W I T N E S S E T H :

WHEREAS the Borrower has requested that Lender make available the financial accommodations hereinafter set forth and in order to induce the Lender to make such accommodations wishes to assign to Lender the Collateral (as hereinafter defined);

WHEREAS the Lender is willing to extend such financial accommodations to the Borrower upon and subject to the terms and conditions set forth in this Agreement; and

WHEREAS the Borrower has executed and delivered to the Lender a note (the "Note") dated of even date herewith and payable to the order of the Lender in the principal sum of Three Hundred Fifty Thousand Dollars **($350,000.00)**, which Note evidences a certain loan in such amount made by the Lender to the Borrower (the "Loan").

NOW THEREFORE, in consideration of the mutual covenants herein contained and to secure the payment of the Indebtedness, it is hereby agreed as follows:

1. The principal amount of the Loan shall be repaid by the Borrower in the manner described in the Note, with interest described therein. The principal sum of the Note, together with all payments due hereunder or under the Note and all other sums that may be advanced by the Lender pursuant to the Note and any other indebtedness or liability of the Borrower to the Lender, direct or indirect, absolute or contingent due or to become due, now existing or hereafter arising, including all future advances or loans that may be made at the option of the Lender, together with any interest due and payable with respect to any of the foregoing until all such sums and the interest thereon are paid, are hereinafter collectively referred to as the "Indebtedness."

2. The term "Collateral" as used herein, shall refer, collectively, to the following property, whether now owned or hereafter acquired by the Borrower and whether or not purchased with proceeds of the Loan or with other sums advanced by the Lender:

    (a)  All of the taxicab vehicles, New York City taxicab licenses and representative medallions (including, without limitation, those vehicles, licenses and medallions described on Schedule A, annexed hereto), taxicab roof lights, taximeters and all other items of property owned by the Borrower or in which the Borrower has rights and used or useful in conjunction with the Borrower's operation of its business;

    (b)  Any subscription right granted to the Borrower by the City of New York to purchase one or more additional taxicab licenses and representative medallions or any partial interest therein;

    (c)  All other personal property owned by the Borrower or in which the Borrower has rights, including, without limitation, all furniture, fixtures, equipment, machinery, inventories, contract rights, moneys, accounts, general intangibles, goods, instruments, documents and chattel paper (except, if the Borrower is a natural person, only to the extent that such personal property is related to or used or useful in conjunction with Borrower's business); and

1

(d)  All substitutions for, all additions to and all proceeds and products of all of the foregoing property described in subparagraphs (a), (b) and (c) of this Paragraph 2 in any form whatsoever (including, without limitation, all proceeds of insurance thereon).

3.  In order to secure (i) the full and timely payment of the Indebtedness and (ii) the performance and observance of the Borrower's obligations under this Agreement and the Note as such obligations now exist or may exist in the future, the Borrower hereby:

(a)  Grants to the Lender a continuing security interest and lien in and to all of the Collateral.  The security interest and lien created hereby shall remain in full force and effect until the Indebtedness has been paid in full, at which time the security interest and lien created hereby shall cease and terminate and this Agreement shall be deemed terminated without further liability on the part of any party to the other; and

(b) Assigns and absolutely transfers to Lender all the right, title and interest of Borrower in, to and under all leases/management agreements for the use of the medallions and other collateral described in attached Schedule "A" together with all the rents, royalties, issues, profits, income, security deposits, and other benefits at any time occurring with respect to the leases/management agreements (collectively, the "Rents") and all extensions, renewals, modifications or replacements of the leases, and together with any and all guarantees of the obligations of the managers/lessees of the leases/management agreements, whether now existing or as signed after the date of the assignment contained in this Security Agreement, and all extensions and renewals of the guarantees.

4.  The Borrower makes the following representations, covenants and warranties to the Lender (which representations, covenants and warranties shall survive the execution and delivery of this Agreement) and agrees with the Lender as follows:

(a)  the Borrower shall pay the Indebtedness and shall perform all of the obligations of this Agreement in accordance with the terms hereof;

(b)  the Borrower is an active small business concern and the sole owner of record of, and has the entire beneficial interest in and good title to the Collateral, free and clear of all claims, pledges, liens encumbrances and security interests of every nature whatsoever (except for the security interest and lien created hereby for the benefit of the Lender and except for the security interests and liens, if any, described on Schedule B, annexed hereto, which security interests and liens are referred to collectively herein as the "Permitted Encumbrances");

(c)  the Borrower has the full and unconditional right to grant to the Lender the security interest and lien granted herein; no terms or conditions of this Agreement are in violation of the provisions of any other agreement to which the Borrower is a party;

(d)  all of the documents which comprise the Collateral are valid, binding and enforceable in accordance with their respective terms;

(e)  the Borrower does and will forever warrant and defend the Lender's right, title, priority, lien and security interest in and on the Collateral against the claims and demands of all persons whosoever (except for Permitted Encumbrances);

(f)  the Borrower and any guarantors have not been known by any other name during the last ten years;

2

(g)   there is no action or proceeding pending, or to the knowledge of the Borrower, threatened, which in any way might materially and adversely affect (i) the rights of the Lender under this Agreement, (ii) the Borrower's or any guarantor's ability to perform its obligations hereunder, (iii) title to the Collateral, or (iv) the validity or priority of the security interest and lien in and on the Collateral created hereunder;

(h)   there are no judgments against the Borrower unpaid or unsatisfied of record in any court of this state or of the United States; no bankruptcy proceedings have ever been instituted by or against the Borrower; and at no time has the Borrower made an assignment for the benefit of creditors;

(i)   the Borrower shall not, without the Lender's prior written consent and in accordance with the conditions of any such consent and in full compliance with the terms hereof and all applicable laws, rules, regulations and orders; make or suffer (i) any sale, assignment or other transfer of, (ii) any further pledge or encumbrance of, or (iii) any further lien upon or security interest in, all or any part of the Collateral.

(j)   the Borrower shall pay, when due, all taxes, assessments (including, without limitation, fines and penalties imposed or assessed by reason of the Borrower's operation of its taxicab vehicles, taxicab licenses and medallions) and license fees related to the Collateral and, if the Borrower is a limited liability company, to the operation of the limited liability company, and shall keep the Collateral free and clear of all liens, charges, taxes and assessments;

(k)   the Borrower, without cost or expense to the Lender, shall execute, deliver, file and record such further agreements, instruments and documents as the Lender may require, including, without limitation, financing statements covering the Collateral and amendments to such financing statements, to impose, perfect, protect and continue the security interest and lien created and granted herein, and hereby irrevocably authorizes the Lender to execute, in the name of the Borrower, any such agreements, instruments and documents and to file and record the same so long as the same does not increase the Borrower's obligations or reduce its rights under this Agreement; and the Lender is authorized to file one or more financing statements covering the Collateral signed only by the Lender;

(l)   the Borrower shall keep the Collateral at the Borrower's garage at the address set forth on the annexed Schedule A and shall not remove same (except in the usual course of business for temporary periods) without the prior written consent of the Lender;

(m)   the Borrower, at its own cost and expense, shall keep the Collateral in good repair and condition and shall not misuse or waste the Collateral, or allow the Collateral to deteriorate except for normal wear and tear, and shall replace any taxicab vehicle that is unsafe or unfit for regular, continuous service, and shall make the Collateral available for inspection by the Lender at all reasonable times;

(n)   the security interest created by this Agreement is security for the repayment of a loan or advance to be used solely for business purposes; to the extent that such loan or advance is to be used to pay all or part of the purchase price of the Collateral or any part thereof, the Borrower agrees to use the proceeds of the loan or advance to pay such purchase price;

(o) the Borrower  shall maintain liability insurance, including excess coverage, for each of its taxicab vehicles in an amount not less than $100,000./$300,000. all of which insurance shall be under policies and with insurers authorized and licensed to do business in the State of New York and acceptable to the Lender, and which policies shall provide for all losses to be paid to the Lender and for at least thirty (30) days' prior written notice to the Lender of any intended cancellation or modification thereof;

3

(p)  the Borrower shall deliver to the Lender the policies and certificates of insurance with evidence of payment of the premiums thereon;

(q)  the Borrower shall give immediate written notice to the Lender and to insurers of loss or damage to the Collateral and shall promptly file proof of loss with said insurers; the Borrower shall fully cooperate with its insurers in reporting, investigating, and prosecuting or defending, as the case may be, any claim by, on behalf of or against the Borrower arising out of the operation of its taxicab vehicles or otherwise in connection with its business; the Borrower hereby irrevocably authorizes the Lender to file claims, and the Lender shall have the sole right to adjust, settle and collect claims under said insurance in the name of the Borrower and the Lender by such means, at such times and on such terms as the Lender may determine, and in the name and on behalf of the Borrower to execute releases and endorse checks or drafts payable in respect of any such insurance claims; and the Borrower hereby assigns to the Lender all sums that may become payable under such insurance, including return of premiums and dividends, as additional security for the Indebtedness;

(r)  the Borrower shall notify the Lender immediately in writing of any change in or discontinuance of the Borrower's place or places of business;

(s)  the Borrower shall notify the Lender immediately in writing of any events or circumstances that at any time may cause the representations and warranties herein to cease to be true;

(t)  the Borrower shall notify the Lender immediately in writing if it obtains any substitutions for or replacements of its taxicab vehicles, licenses and medallions, roof lights or taximeters, or any other part of the Collateral; all of which substitutions and replacements shall constitute collateral for all purposes hereunder;

(u)  the Lender, in any action to enforce, foreclose or protect the security interest and lien created and granted hereby, shall be entitled, without notice and without regard to the adequacy of any security held by the Lender for the Indebtedness, to the appointment of a receiver;

(v)  The Borrower (or, if the Borrower is a limited liability company, partnership or joint venture, each officer, general partner or member of the Borrower, as the case may be) has read and is familiar with the Rules, Requirements and Procedures Governing Owners of Medallions Taxicabs as promulgated by the New York City Taxi and Limousine Commission (the "Rules"); and the Borrower shall comply with said Rules and with any and all other applicable terms, provisions, rules, regulations and laws promulgated by any governmental or quasi-governmental agency having jurisdiction over such New York City taxicab vehicles, taxicab licenses and medallions as may be part of the Collateral; and shall obtain all taxicab license and medallion renewals, auto use tax permits, vehicle registrations and such other permits and licenses as may be required;

(w)  all of the required licenses, permits, accreditations and agreements required for operation of the Borrower's business have been obtained and that the Borrower shall at all times maintain an active operating business engaged in regular and continuous activity;

(x)  the Borrower shall promptly notify the Lender and deliver to the Lender a copy of any notice of default it may receive in connection with any of the Permitted Encumbrances;

(y)  the Borrower and each guarantor, if any, have been afforded time to retain legal counsel to represent them in this transaction.

5.    The Borrower hereby agrees that, without notice or further assent and without otherwise affecting the obligations of the parties hereto or the security interest granted hereunder, before, at or after

the Maturity Date (as defined in the Note), expressed or declared:  (a) the liability of the Borrower or any other party under the Note or for any other part of the Indebtedness, may, from time to time, in whole or in part, be renewed, extended, modified, prematured, compromised or released by the Lender, whether in bankruptcy proceedings or otherwise, as such Lender may deem advisable, and (b) the Lender may, from time to time, in its discretion, exchange, modify, release or surrender, in whole or in part, with or to the Borrower and its representatives or any other appropriate party, as the case may be, (i) any Collateral or any substitutes or additions thereto or (ii) the surplus net proceeds derived from the sale or sales or disposition of the Collateral by the Lender pursuant to the terms of this Agreement.

6.    The occurrence of any of the following events shall constitute an Event of Default under this Agreement:

(a)  if the Borrower shall not pay when due:  (i) any installment of principal or interest under this Note; or (ii) any other payments due under the Note prior to the Maturity Date;

(b)  if the Borrower shall not pay when due, any other part of the Indebtedness or any other amount payable upon or in connection with the Indebtedness or any part thereof;

(c)  the failure of the Borrower to perform, and/or a breach by the Borrower of, any of the terms, covenants or conditions of this Agreement or the Note;

(d)  the failure of the Borrower or any guarantor to pay or bond any judgment against him within thirty (30) days after entry, or the filing of any tax deficiency notice or lien by the municipal, state or federal governments or agencies thereof;

(e)  the Borrower shall generally not be paying its debts as they mature or the Borrower or any guarantor shall file a petition in bankruptcy or take advantage of the Bankruptcy Code and/or any other law for the relief of debtors, or shall make an assignment for the benefit of creditors, or if a custodian or receiver shall be appointed for the property of the Borrower or any guarantor, or if an insolvency proceeding under any bankruptcy law or insolvency act shall be instituted against the Borrower or any guarantor and any such proceeding and/or appointment shall not be dismissed or vacated within thirty (30) days after such institution or appointment, or if the Borrower or any guarantor admits in writing its or his inability to pay its or his debts as they become due, or if the Borrower or any guarantor becomes insolvent howsoever otherwise evidenced;

(f)  the Borrower transfers, sells, exchanges or leases, assigns or grants, or makes or suffers any further pledge or encumbrance of or any further lien upon or further security interest in any of the Collateral or enters into any agreement to do any of the foregoing;

(g)  any of the representations and warranties made by the Borrower in this Agreement or in any other instrument executed in connection with this Agreement or the Loan are or become materially untrue or incorrect or materially misleading;

(h)  if the Borrower or any other guarantor is a natural person, the death of such person; if the Borrower is a limited liability company, partnership or a joint venture, the death of a shareholder, general partner or member thereof, or the dissolution or other termination of the Borrower's existence;

(i)  the failure of the Borrower or any guarantor (or any shareholder, partner or member of the Borrower or of any guarantor) to perform or comply with any covenant or condition contained in any agreement to which the Lender and the Borrower or any guarantor or any such shareholder, partner or member are parties (including, without limitation, any guaranty or pledge agreement guaranteeing or securing the Borrower's obligations hereunder), without the benefit of any applicable grace period;

5

(j)  the failure of the Borrower to perform or comply with any covenant or condition contained in any agreement or document evidencing or creating any Permitted Encumbrance, without the benefit of any applicable grace period.

Upon the occurrence of an Event of Default, the Lender shall have the right to declare the entire amount of the Indebtedness and interest accrued thereon immediately due and payable by giving written notice thereof to the Borrower and, upon the giving of such notice, the Indebtedness shall be immediately due and payable by the Borrower to the Lender.

7.  In the event that the Lender elects to accelerate the Indebtedness as provided above and within ten (10) days after the mailing of such notice the Borrower fails to pay the Indebtedness, or, in any event, if the Borrower shall fail to pay the entire unpaid principal balance of the Note and accrued interest thereon upon the Maturity Date or any other part of the Indebtedness or interest thereon when it is due, then in any such events the Lender shall have the right, in addition to and in connection with any other rights it may have under the Note, this Agreement, the Uniform Commercial Code and otherwise at law or in equity, (a) to apply any cash which it received pursuant to the provisions of this Agreement to the payment of the Indebtedness, (b) to enter upon the Borrower's premises peaceably by the Lender's own means or with legal process and take possession of the Collateral, and the Borrower agrees not to resist or interfere, (c) to require the Borrower to assemble the Collateral and make it available to the Lender at a place to be designated by the Lender that is reasonably convenient to both parties (it being agreed that the Borrower's address set forth above is a place reasonably convenient for such assembling), and (d) to sell, assign and deliver the Collateral at public or private sale, for cash, on credit or future delivery, with or without advertisement of the time, place or terms of sale and in connection therewith to grant options and to use the services of a broker, except that if the sale be a private sale upon five (5) days' written notice to the Borrower of the date, time and place of any sale and the terms of the sale, which notice the Borrower agrees is reasonable, all other demands, advertisements and notices being hereby waived. Any sale shall be free of any and all equity or right of redemption, which Borrower hereby waives and releases.

At any sale the Lender, or its designee, may purchase the Collateral.  The Lender shall not be obligated to make any sale of any Collateral if it shall determine not to do so, regardless of the fact that notice of sale may have been given.  The Lender may, without notice or publication, adjourn any public or private sale or cause the same to be adjourned from time to time and if such sale be a private sale by announcement at the time and place fixed for sale, and such sale may, without further notice, be made at the time and place to which the same was so adjourned.  If any of the Collateral is sold by the Lender upon credit or for future delivery, the Lender shall not be liable for the failure of the purchaser to purchase or pay for the same and, in the event of such failure, the Lender may resell such Collateral.  In no event shall the Borrower be credited with any part of the proceeds of sale of any Collateral until cash payment thereof has actually been received by the Lender.  In case of any sale, the Lender may first deduct all costs and expenses of collection, sale and delivery of the Collateral and any costs and expenses incidental thereto, including, without limitation, the expense of pursuing, searching for, receiving, taking, keeping and storing the Collateral, advertising the sale of the Collateral, reasonable attorneys' fees and disbursements, brokerage commissions and transfer fees and taxes, and shall apply any residue first to the payment of any accrued interest due under the Note and any other part of the Indebtedness and then to the payment of the unpaid principal balance thereof.  The balance, if any, remaining after payment in full of the Indebtedness shall be paid to the Borrower, to the extent permitted by law, provided there are no other claimants.  Any sale conducted upon the foregoing terms or by any other method of sale (if conducted in conformity with practices of any banks disposing of similar security) shall be deemed commercially reasonable.  The Borrower agrees that the Lender shall have the right to continue to retain

the Collateral until such time as the Lender, in its reasonable judgment, believes that an advantageous price can be obtained for the Collateral and, absent gross negligence, the Lender shall not be liable to the Borrower for any loss in the value of the Collateral by reason of any such retention of the Collateral by the Lender. Further, the Lender may elect to retain the Collateral in full satisfaction of the Indebtedness, in which event notice thereof shall be given to the Borrower, and if the Lender receives an objection in writing from the Borrower within twenty-one (21) days after service of the notice, then and in such event the Lender shall commence to dispose of the Collateral in the manner hereinbefore set forth; provided, however, that if the net proceeds to be received from any disposition would be insufficient to satisfy in full the Indebtedness, the Lender shall not be compelled to go forward with such proposed disposition, and shall be entitled to retain the Collateral in full satisfaction of the Indebtedness despite any objection by the Borrower to such retention.

8.   The Borrower agrees that the Lender and its officers, agents and attorneys shall incur no liability to the Borrower in the event that the Lender transfers the Collateral in accordance with the provisions of thisAgreement, or refused to effect any transfer of the Collateral attempted to be made by the Borrower without any consent or approval of the Lender required by the terms hereof, or refuses or fails to give any such consent or approval, and the Borrower hereby agrees to indemnify the Lender against, and to hold the Lender harmless from, any and all expenses, costs, liability and damages (including without limitation reasonable attorneys' fees and disbursements) incurred or sustained by reason of its acts or omissions, as aforesaid.

9.   The Borrower shall have no right to require that the Lender proceed against all or any part of the Collateral or any guaranty or real or personal property given as security for the Indebtedness whether or not existing or hereafter given in any order of priority before or after or contemporaneously with the exercise of the Lender's rights or remedies with respect to the Collateral.

10.   Effective upon the occurrence of an Event of Default, the Borrower hereby irrevocably appoints the Lender as the Borrower's attorney-in-fact coupled with an interest for the purpose of carrying out the provisions of this Agreement and taking any action and executing any instrument which the Lender may deem necessary or advisable to accomplish the purposes hereof. Without limiting the foregoing, the Lender shall have the power in the place and stead of, and in the name of, the Borrower, or in its own name, to take any and all action to complete and deliver any collateral assignment delivered by Borrower herewith and to execute and deliver any and all agreements, certificates, documents and instruments that may be necessary or desirable, in its sole discretion , to realize upon the Collateral, including, without limiting the generality of the foregoing, to ask, demand, collect, and receive and give acquittances and receipts for any and all moneys due and to become due with respect to the Collateral; to take possession of and endorse and collect any checks, drafts, notes, acceptances or other instruments for the payment of moneys due with respect to the Collateral; and to file any claim or to take any other action or proceeding in any court of law or equity or otherwise as may be deemed appropriate by it for the purpose of collecting any and all such moneys due with respect to the Collateral whenever payable; to direct any party liable for any payment with respect to the Collateral to make payment of any and all moneys due and to become due thereunder directly to the Lender or as the Lender shall direct; to receive payment of and receipt for any and all moneys, claims and other amounts due and to become due at any time in respect of or arising out of the Collateral;  to sign and endorse any assignments, verifications and notices in connection with accounts and other documents relating to the Collateral; to commence and prosecute any suits, actions or proceedings at law or in equity in any court of competent jurisdiction to collect the Collateral or any part thereof and to enforce any other right in respect of the Collateral; to defend any suit, action or proceeding brought against Borrower with respect to the Collateral; to collect and enforce the payment of any amounts due with respect to the Collateral by suit, proof of debt or claim or otherwise in any proceeding under the Federal Bankruptcy Code, or in any dissolution, insolvency, liquidation or other proceeding involving an adjustment of the indebtedness or interests in any obligor upon the Collateral or application of any assets of such obligor to the payment in

7

liquidation thereof, or otherwise; and, in connection with any sale of the Collateral, generally to sell, transfer, pledge, make any agreement with respect to or otherwise deal with the Collateral as fully and completely as though the Lender was the absolute owner thereof for all purposes, and to do, at the Lender's option and at the expense of the Borrower, at any time, or from time to time, all acts and things which the Lender deems necessary or desirable to protect, preserve or realize upon the Collateral in order to effect the intent of this Agreement, all as fully and effectively as the Borrower might do.  The powers conferred on the Lender hereunder are solely to protect its interests in the Collateral and shall not impose any duty upon it to exercise any such powers, nor shall the Lender be responsible for or be deemed to have assumed any of the Borrower's liabilities or obligations under the Collateral. The Lender shall be accountable only for amounts that it actually receives as a result of the exercise of such powers, and neither the Lender nor any of its officers, agents or designees shall be responsible to the Borrower for any act or failure to act, or for any error of judgment or mistake of fact or law.  The Borrower agrees to indemnify, defend and hold harmless the Lender from and against any and all claims, liabilities, costs and expenses (including reasonable attorneys' fees) arising out of or relating to the exercise by the Lender of any of its rights hereunder.

11.  The remedies provided herein in favor of the Lender shall not be deemed exclusive, but shall be cumulative, and shall be in addition to all other remedies in favor of the Lender existing at law or in equity.

12.  The Lender, at its option, without notice to or demand upon the Borrower and without waiving or releasing any default, may make any payments for the Borrower's account, or perform any of the Borrower's obligations under this Agreement or do any acts required to be done in order to prevent a default under or breach of this Agreement (including, without limitation, the payment of premiums for Borrower's insurance as required hereunder), but the Lender under no circumstances shall be obligated to do so.  In the event the Lender makes any of the said payments or does any of said acts, said payments and the costs of said acts (including, without limitation, reasonable attorneys' fees and disbursements), together with interest thereon at the maximum legal rate, shall be added to the Indebtedness secured hereby, and shall be payable to the Lender by the Borrower on demand, whether or not any action or proceeding is commenced by or against the Lender.  If any action or proceeding is commenced by the Lender, or if any action or proceeding is commenced by the Borrower or anyone else and the Lender is made a party thereto, in which action or proceeding it becomes necessary or desirable to foreclose, uphold or defend the security interest and lien created by this Agreement or to enforce, uphold or defend any of the rights granted to the Lender by this Agreement, all sums paid by the Lender for the expense of any such litigation and all costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements), so incurred together with interest thereon at the maximum legal rate, shall be added to the Indebtedness hereby secured and shall be payable to the Lender by the Borrower on demand.

13.  The Lender shall have no duty as to the collection or protection of the Collateral or any income thereon or as to the preservation of any rights pertaining thereto, beyond the safe custody of any Collateral actually in its possession. The Borrower releases the Lender from any claims, causes of action and demands at any time arising out of or with respect to this Agreement, the Collateral and/or any actions taken or omitted to be taken by the Lender with respect thereto.

14.  No delay on the part of the Lender in exercising any of its options, powers or rights, or partial or single exercise thereof, shall constitute a waiver thereof.

15.  The Lender shall have the right to assign this Agreement and the Collateral and all of its rights, title and interest hereunder and in the Collateral without the Borrower's consent.  Upon any such assignment, the Lender shall have no further liability or obligation hereunder.

16.  Except as prohibited by statute, the Borrower shall, and hereby does, waive trial by jury in any action, proceeding or counterclaim brought by the Lender on any matter whatsoever arising out of or in any way connected with this Agreement, the Collateral and/or the relationship created thereby; and, with respect to any matter for which a jury trial cannot be waived, the Borrower agrees not to assert any such claim as a counterclaim in, or move to consolidate same with, any action or proceeding.

17.  Any notice, demand or consent under this Agreement shall be in writing.  Any notice or demand under this Agreement shall be deemed to have been sufficiently given for all purposes hereof (a) if and when delivered personally or (b) if or when mailed by registered or certified mail, postage prepaid, return receipt requested, to the party at its address shown above and in the case of notice to the Lender, with a copy to MEDALLION FINANCIAL CORP., 437 Madison Avenue, New York, New York, 10022. Any party hereto may designate a different address for the purpose of the service of notices hereunder by giving notice thereof in accordance with the provisions of this Paragraph.

18.     This Agreement shall inure to the benefit of and be binding upon, the Lender named herein, its successors, assigns and legal representatives.  Without intending to permit an assignment by the Borrower, this Agreement shall also bind the Borrower named herein, its successors, assigns and legal representatives.

19.  Except for those terms expressly defined herein, all other terms herein that are defined in the Uniform Commercial Code shall have the meanings therein stated.

20.  All pronouns and any variation thereof shall be deemed to refer to the masculine, feminine or neuter, singular or plural, as the identity of the person or persons may require.  The term "Borrower" shall mean "Borrowers" if more than one person is the Borrower, and in such event, the obligations of the Borrower shall be joint and several.

21.  This Agreement and the rights and obligations of the Lender and the Borrower hereunder shall be construed in accordance with and governed by the laws of the State of New York.  This Agreement contains the full understanding of the parties with respect to the subject matter hereof.  This Agreement may not be terminated nor may any of its provisions be changed or waived, except by writing signed by the party against whom such termination, change or waiver is sought to be applied.  A waiver by the Lender of any default, right or remedy hereunder on any one occasion shall not be construed as a waiver of any other default or a bar to any right or remedy the Lender would otherwise have on any future occasion.

22.  In case any one or more of the provisions contained in this Agreement or any application thereof shall be deemed invalid, illegal or unenforceable in any respect, such affected provisions shall be construed and deemed rewritten so as to be enforceable to the maximum extent permitted by law, thereby implementing to the maximum extent possible, the intent of the parties hereto, and the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

23.  If any amounts due under this Agreement or the Note are due upon demand or notice by the Lender and if the Lender does not demand or notice the same or if noticed, the period under the notice extends beyond the Maturity Date, then such amounts shall in any event be due and payable upon the Maturity Date.

24.  The Borrower agrees (a) to furnish to the Lender, with reasonable promptness, tax returns and such financial and other information concerning the business, operations, assets and condition of the Borrower, financial or otherwise, as the Lender may reasonably request from time to time, and (b) at any

reasonable time and from time to time to permit the Lender or any of its agents or representatives to examine and make copies of and abstracts from its books and records (including, without limitation, documents and records required to be kept by the Borrower according to the Rules of the New York City Taxi and Limousine Commission), visit its places of business and garages in which its taxicab vehicles are maintained, and discuss its affairs, finances and accounts with the Borrower or any of its officers, directors, members, or partners, or its independent accountants, whom the Borrower shall direct to cooperate fully in any such discussions.  Further, at the request of the Lender made no less than two months after the end of the Borrower's fiscal year, the Borrower shall, within ten (10) days of such request, provide to Lender its annual balance sheet and certified financial statement for such fiscal year, certified by an independent certified public accountant.

25.  The Borrower shall, at any time and from time to time upon five (5) days' notice from the Lender, deliver to the Lender or its designees estoppel certificates as to the Collateral, certified by an officer, managing member or general partner of the Borrower, as the case may be, setting forth as of the date of such certificate the amounts paid and unpaid amounts due to the Lender upon the Indebtedness, whether any default or Event of Default has occurred with respect to such Collateral or this Agreement or any event has occurred or condition exists which, with the passage of time or the giving of notice, or both, would constitute a default or Event of Default under this Agreement (and if so, specifying the nature thereof).

26.  In the event that any payment due hereunder or under the Note and upon any other part of the Indebtedness is not received by the Lender within ten (10) days of the date when such payment is due and payable, a late charge of five cents ($0.05) for each dollar ($1.00) so overdue may be charged by the Lender for the purpose of defraying the expense incident to handling such delinquent payment, which late charge shall be payable on demand.

27.  From and after the date of occurrence of an Event of Default or the Maturity Date, or, if any other sum is not paid when it is due hereunder, from and after the date when it is due, interest on the entire unpaid balance of the Indebtedness, and on any other sums payable hereunder to the Lender, shall accrue and be payable at the highest interest rate permitted by law.

28.  The Debtor hereby authorizes the Secured Party to file financing statements describing the collateral. The Debtor agrees to pay all filing fees and all other costs and expenses incident to the filing of such statements.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the day and year first above written.

DEBTOR

SECURED PARTY
MEDALLION BANK

By: _____

_____
NASIR MAHMOOD MALIK

## SCHEDULE A

Garage Address:  2775 East 12th Street Apt. 102, Brooklyn, New York 11235

| Medallion Number | Vehicle | Identification Number |
|---|---|---|
| 8B44 | 2013 Toyota | JTDZN3EU5D3244284 |

**SCHEDULE B**

**Permitted Encumbrances**

THERE ARE NO PERMITTED ENCUMBRANCES OTHER THAN THOSE SET FORTH ABOVE.

STATE  OF   NEW YORK     )
                         : SS.:
COUNTY OF   QUEENS       )

On the 18th day of February, 2016, before me, the undersigned, a notary public in and for the state, personally appeared NASIR MAHMOOD MALIK, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

ROGER H. DAVIS
Notary Public, State of New York
No 02DA5940225
Qualified in New York County
Commission Expires October 31, 2018

Adrian Rodriguez Jr
Notary Public of the State of New York
No  01 RO5055772
Qualified in New York County
Commission Expires August 5, 2018

NALDA SANTANA
Notary Public, State of New York
No. 01SA6005984
Qualified in Bronx County
Commission Expires July 21, 2019

Vanessa S. Govea
Notary Public, State of New York
No 01GO5227592
Qualified in Queens County
Commission Expires September 7, 2018

Gina Villacorta
Notary Public, State of New York
No. 01VI4497486
Qualified in New York County
Commission Expires June 8, 2018

Yan Tak Chung
Notary Public, State of New York
No. 01CH6224717
Qualified in New York County
Commission Expires July 12, 2018

Ike I. Berberabe
Notary Public, State of New York
No. 01BE4793190
Qualified in New York County
Commission Expires April 30, 2019

13

**719550**   **2016 Feb 18 PM12:37**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Gisella Melendez 800-331-3282

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071, USA
efiling@wolterskluwer.com
(Fax)818-662-4141

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME **MALIK** | FIRST NAME **NASIR** | MIDDLE NAME **M.** | SUFFIX |
| 1c. MAILING ADDRESS **2775 EAST 12TH STREET APT. 102** | CITY **BROOKLYN** | STATE **NY** / POSTAL CODE **11235** | COUNTRY **USA** |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any **None** ☒ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME **MALIK** | FIRST NAME **NASIR** | MIDDLE NAME **MAHMOOD** | SUFFIX |
| 2c. MAILING ADDRESS **2775 EAST 12TH STREET APT. 102** | CITY **BROOKLYN** | STATE **NY** / POSTAL CODE **11235** | COUNTRY **USA** |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any **None** ☒ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **MEDALLION BANK** | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS **1100 East 6600 South, Suite 510** | CITY **Salt Lake City** | STATE **UT** / POSTAL CODE **84121** | COUNTRY **USA** |

**4. This FINANCING STATEMENT covers the following collateral:**
**See Collateral Attachment**

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | Debtor 1 | Debtor 2 |

**8. OPTIONAL FILER REFERENCE DATA** NY-

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**Filing Number-201602185194935**

OF THE FOLLOWING PROPERTY, WHETHER NOW OWNED OR HEREAFTER ACQUIRED BY DEBTOR:
TAXICAB VEHICLES AND NYC LICENSES AND MEDALLIONS, INCLUDING WITHOUT LIMITATION MEDALLION NO.(S):8B44 AND/OR SUBSCRIPTION
TS TO ANY NYC TAXI MEDALLIONS OWNED BY DEBTOR. ALL ROOF LIGHTS AND TAXIMETERS, ALL EQUIPMENT, GOODS, ACCOUNTS, BANK ACCOUNTS,
TRACT RIGHTS, INSTRUMENTS AND GENERAL INTANGIBLES, ALL SUBSTITUTIONS FOR, REPLACEMENTS, ADDITIONS TO AND ACCESSORIES THERETO
PROCEEDS AND PRODUCTS OF THE FOREGOING PROPERTY.

THE RIGHT, TITLE AND INTEREST OF DEBTOR IN, TO AND UNDER ALL LEASES/MANAGEMENT AGREEMENTS FOR THE USE OF THE MEDALLIONS
ETHER WITH ALL THE RENTS, ROYALTIES, ISSUES, PROFITS, INCOME, SECURITY DEPOSITS, AND OTHER BENEFITS AT ANY TIME OCCURRING WITH
'ECT TO THE LEASES/MANAGEMENT AGREEMENTS (COLLECTIVELY, THE "RENTS") AND ALL EXTENSIONS, RENEWALS, MODIFICATIONS OR
ACEMENTS OF THE LEASES, AND TOGETHER WITH ANY AND ALL GUARANTEES OF THE OBLIGATIONS OF THE MANAGERS/LESSEES OF THE
ES/MANAGEMENT AGREEMENTS, WHETHER NOW EXISTING OR AS SIGNED AFTER THE DATE OF THE ASSIGNMENT CONTAINED IN THIS SECURITY
EEMENT, AND ALL EXTENSIONS AND RENEWALS OF THE GUARANTEE.

THE RIGHT, TITLE AND INTEREST OF DEBTOR IN AND TO:

CLE MAKE AND YEAR    VEHICLE IDENTIFICATION NUMBER

Toyota
N3EU5D3244284